902 F.2d 362
 58 USLW 2729, 30 Fed. R. Evid. Serv. 497
 Rosemarie CHRISTOPHERSEN, Surviving Spouse of Albert Roy
Christophersen, deceased and Steven Roy
Christophersen, Plaintiffs-Appellants,
v.
ALLIED-SIGNAL CORPORATION, Inco Alloys International, Inc.,
United Catalysts, Inc., the Hall Chemical Company,
Marathon Manufacturing Company, and CP
Chemicals, Inc., Defendants-Appellees.
 No. 89-1995
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 June 4, 1990.
 
 Paul Colley, Jr., Law Offices of Paul Colley, Jr., Tyler, Tex., for Christophersen, et al.
 Steve Schoettmer, P. Jefferson Ballew, Thompson & Knight, Dallas, Tex., for Allied-Signal, Inc.
 Marc A. Sheiness, Hirsch, Glover, Robinson & Sheiness, Houston, Tex., for Inco Alloys Intern., Inc.
 Pat Beard, Beard & Kultgen, Waco, Tex., for United Catalysts, Inc.
 R. Brent Cooper, Stan Thiebaud, Cowles & Thompson, Dallas, Tex., for Hall Chemical Co.
 Clifton T. Hutchison, Hughes & Luce, Dallas, Tex., for Marathon Mfg.
 Jeff Kinsel, Elizabeth S. Miller, Naman, Howell, Smith & Lee, Waco, Tex., for CP Chemicals, Inc.
 Appeal from the United States District Court for the Western District of Texas.
 Before REAVLEY, KING and JOHNSON, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 On motion for summary judgment, the district court determined that the opinion of plaintiffs' expert witness should be excluded because it was unreliable. The exclusion of this evidence left plaintiffs without any support in the record for their contention that Albert Roy Christophersen's exposure to nickel and cadmium caused the cancer that resulted in his death. For that reason the court granted the defendants' summary judgment motion. Rosemarie Christophersen and Steven Roy Christophersen, the surviving spouse and son of the decedent, seek reversal and argue that the court erred in disregarding their expert witness' opinion evidence. Because we agree that plaintiffs did raise an issue on a causal relation between a marketing defect and the cancer, we reverse the judgment and remand the case.
 
 I.
 
 2
 Albert Roy Christophersen died in March of 1986 as a result of cancer that originated in his colon and metastasized to his liver. During the fourteen years preceding his death, Christophersen worked for Marathon Manufacturing Company at its plant in Waco, Texas. At its Waco operation, Marathon among other things engages in the production of nickel/cadmium batteries. Christophersen never was directly involved in the production of these batteries. The record, however, indicates that over a number of years Christophersen's job duties required him to visit the area of the plant in which the batteries were manufactured. During these visits, Christophersen was exposed to fumes resulting from the manufacturing process. Plaintiffs contend that these fumes contained particles of nickel and cadmium and that Christophersen's exposure to these heavy metals caused the cancer that resulted in his death.
 
 
 3
 Plaintiffs brought suit pursuant to the Texas Wrongful Death and Survival Statute, Tex.Civ.Prac. & Rem.Code Ann. Secs. 71.001-031 (Vernon 1986), against Marathon and a number of companies that supplied Marathon with chemicals and other materials used in the manufacture of the nickel/cadmium batteries. Plaintiffs' complaint alleged that the products used in the production of the batteries were defectively designed, manufactured, and marketed and were producing causes of the cancer that resulted in Christophersen's death. The complaint also alleged that Marathon was aware of the dangerous nature of the chemicals and products and failed either to provide Christophersen a safe place to work or to warn him of the dangerous conditions that existed at the plant. Defendants moved for summary judgment.
 
 
 4
 In considering plaintiffs' marketing defect claim,[1] the court focused on the affidavit of plaintiffs' expert witness, Dr. Lawrence Miller, who indicated that Christophersen's exposure to nickel and cadmium at Marathon caused the cancer that resulted in his death. The court undertook an in-depth review of the bases for Dr. Miller's conclusion and determined that his opinion should be excluded. This ruling left plaintiffs without any evidence linking Christophersen's cancer to his exposure to nickel and cadmium, and the court held that, absent evidence creating an issue of material fact with regard to causation, summary judgment on the marketing defect claim was appropriate.
 
 II.
 A.
 
 5
 Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the plaintiff's case. Fed.R.Civ.P. 56(c); see Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir.1988); Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., 669 F.2d 1026, 1031 (5th Cir. Unit B 1982). In this case, the district court considered Dr. Miller's affidavit as the only evidence supporting plaintiffs' claim of causation. Plaintiffs do not contend otherwise. Therefore, if the district court properly determined that Dr. Miller's conclusion should be excluded, the grant of summary judgment was appropriate.
 
 B.
 
 6
 The district court based its decision to exclude the causation evidence on its determination that Dr. Miller's conclusion was unreliable.[2] Our decisions indicate that the court's determination in this regard may be reversed only if it was manifestly erroneous. See Washington, 839 F.2d at 1123; Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir.1987). We have also held, however, that in undertaking its inquiry into the admissibility of expert testimony a court should accord "proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Id. at 422; see Dixon v. International Harvester Co., 754 F.2d 573, 580 (5th Cir.1985) (noting that once a witness is "properly admitted as an expert, the jury [is] at liberty to accept or reject his testimony, and to judge his credibility"). Thus, a court should exclude an expert opinion only if it is "fundamentally unsupported" and "would not actually assist the jury in arriving at an intelligent and sound verdict." Viterbo, 826 F.2d at 422.
 
 
 7
 In an affidavit submitted to the district court, Dr. Miller reached the following conclusion:
 
 
 8
 Based upon my review of the medical records, research literature, my education and experience, it is my opinion that, more likely than not, the metastatic cancer which caused the death of Mr. Christophersen was caused by his exposure to toxic nickel and cadmium fumes during his lifetime. I have reached this opinion after conducting extensive research and investigation into this matter and my opinion is based upon reasonable medical probability.
 
 
 9
 Counsel for defendants explored the bases for this conclusion during an extensive oral deposition. In its memorandum opinion, the district court focused its analysis on three types of information that Dr. Miller relied on in forming his conclusions.
 
 
 10
 Evidence of Exposure.--Most of the information Dr. Miller received regarding Christophersen's exposure to nickel and cadmium came from the affidavit of Edgar G. Manoliu, a former employee at Marathon's Waco plant. This affidavit indicated that over a fourteen-year period Christophersen's duties required him to regularly visit areas of the Marathon plant in which he was exposed to "many fumes and gases," including "airborne particles of cadmium and nickel alloys." Dr. Miller relied on these statements and other information from plaintiffs' counsel in concluding that Christophersen's employment history at Marathon "included extensive exposure to nickel and cadmium fumes." The district court took issue with Dr. Miller's conclusion, primarily because there was no indication of the chemical composition of the fumes in the plant or the level of exposure, and found that "Dr. Miller could not base a reliable opinion solely upon the information provided in the Manoliu affidavit."
 
 
 11
 Although the district court certainly was correct in observing that evidence concerning the chemical composition of the fumes in the Marathon plant and the level of exposure would be helpful, the court erred to the extent that it held the absence of such information rendered Dr. Miller's opinion unreliable. In his deposition, Dr. Miller noted that "in general there appears to be a dose-response effect for [nickel and cadmium] in terms of their carcinogenicity." "That is, the greater the dose ... on a daily basis [and] the dose over time," the higher the risk of the development of cancer. Dr. Miller also indicated, however, that the dose-response relationship could not be applied to individual cases, and thus knowledge of the precise level of exposure on a daily basis would not necessarily be of benefit in reaching an accurate conclusion as to the cause of an individual's cancer. With regard to Christophersen's cancer, Dr. Miller apparently placed primary emphasis on the exposure over time and indicated that so long as "the general dates are correct in terms of the dates of exposure, the general amounts of exposure based on number of visits made to the area and a general description of the time spent in the area," his conclusions would remain unaffected. Dr. Miller was entitled to rely on the information provided him in formulating his opinions, see Peteet v. Dow Chem. Co., 868 F.2d 1428, 1432 (5th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989), and he apparently determined that the information was sufficient to allow him to make a finding. At trial defendants certainly may challenge the factual basis for Dr. Miller's conclusions and argue that additional information was necessary in order to make an accurate finding on causation, but these arguments go to the weight to be accorded Dr. Miller's opinion and not to its admissibility.
 
 
 12
 Pathogenesis of Small Cell Carcinoma.--Christophersen's medical and autopsy records indicate that he died as the result of small cell carcinoma of the colon that metastasized to his liver. In his deposition, Dr. Miller testified that small cell carcinoma is an unusual form of cancer that has been linked to changes in the genetic material in cells caused by exposure to toxic substances. When these altered cells replicate, the resulting or daughter cells may retain the genetic alteration and become cancerous. Dr. Miller indicated that small cell carcinoma in the lung had been associated with nickel and cadmium exposure and went on to suggest that, "[b]ased on what's known about the biochemical nature of small-cell" carcinoma, "the same sorts of chemicals and exposures that are associated with small-cell carcinoma of the lung are likely to be associated with small-cell carcinoma elsewhere in the body."
 
 
 13
 The district court again took issue with the basis of Dr. Miller's analysis, stating: "Dr. Miller presents no authority for his opinion that a primary small cell cancer of the colon has the same pathogenesis as a primary small cell cancer of the lung simply because their appearance is similar." This characterization of the testimony, however, thoroughly distorts Dr. Miller's analysis. Nowhere in his deposition testimony does Dr. Miller even suggest that the mere similarity of appearance between the cancer cells was the key to his reasoning. As is suggested above, a full review of the deposition indicates that this aspect of Dr. Miller's analysis was based on the nature of the biochemical reaction that results in the development of small cell carcinoma. The district court's simplistic characterization of the analysis has no relevance to this more sophisticated line of reasoning.
 
 
 14
 The record does contain the affidavits of several doctors who are critical of Dr. Miller's conclusions. These affidavits primarily address the need for epidemiological and animal studies specifically linking nickel and cadmium exposure to colon cancer, an issue addressed infra. The affidavits, however, briefly address Dr. Miller's analysis regarding the origin of small cell carcinoma. Dr. Sherwood Gorbach concludes that "Dr. Miller's presumption that nickel and cadmium have been associated with a certain type of cell in lung cancer and therefore should be associated with a similar type of cell in the colon has no support in medical science and is without foundation." Dr. Richard Rudders states:
 
 
 15
 Dr. Miller's assertion that small cell colon cancer and small cell lung cancer have the same pathogenesis because the cells have the same size when viewed under a microscope is without basis in fact and has no scientific merit. These tumors in fact have to my knowledge never been shown to have a common causation or share a proven common origin.
 
 
 16
 As did the district court, the first sentence of the excerpt from Dr. Rudders' affidavit mischaracterizes Dr. Miller's testimony. The second sentence and the excerpt from Dr. Gorbach's affidavit create at best a conflict between experts. Nevertheless, relying on these conclusory statements and its own interpretation of the testimony, the district court concludes that "Dr. Miller's supposition that a small cell carcinoma of the lung is likely to be associated with a small cell carcinoma located elsewhere in the body is 'without precedent in cancer epidemiology and is not scientifically correct.' "[3] In so holding, the court, on the basis of affidavits and thus without the benefit of development of the opinions through cross-examination, simply chose sides in this battle of the experts and thereby usurped the role of the jury in evaluating the evidence and the credibility of expert witnesses.
 
 
 17
 Medical Literature.--Bolstered by the affidavits of Dr. Gorbach and Dr. Rudders, the district court concluded that Dr. Miller's opinion was inadmissible because it was not based on epidemiological, animal, or in vitro studies showing a "statistically significant link between colon cancer and exposure to nickel and/or cadmium." Dr. Miller agreed that these were the three main types of evidence used to establish cancer causation. Dr. Miller also admitted that he was not aware of any articles or studies specifically linking nickel and cadmium exposure to small cell cancer of the colon. He nevertheless concluded that the state of medical knowledge was such that, based upon a more likely than not standard, he could conclude that Christophersen's exposure to nickel and cadmium at Marathon caused his cancer.
 
 
 18
 In support of his conclusions, Dr. Miller noted that nickel and cadmium are known to be carcinogenic in humans. Dr. Miller also indicated that studies had linked nickel and/or cadmium exposure to lung, kidney, and prostate cancer. Dr. Miller discussed his theory as to how the nickel and cadmium that Christophersen inhaled at Marathon reached his colon, there causing genetic alterations that resulted in the cancer. In reaching his conclusions, Dr. Miller took into consideration the duration of Christophersen's exposure to nickel and cadmium and the absence of evidence of exposure to other potentially carcinogenic substances such as asbestos or alcohol. These are methodologies that physicians traditionally rely on in diagnosing the cause of a particular patient's cancer. See Osburn v. Anchor Laboratories, Inc., 825 F.2d 908, 915-16 (5th Cir.1987), cert. denied, 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988). The district court should have permitted plaintiffs to present their causation evidence to the jury, which could then "determine the appropriate weight to be given to the testimony." In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 278 (3d Cir.1983), rev'd in part on other grounds, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see Osburn, 825 F.2d at 915 (holding that "medical expert opinion testimony that is controversial in its conclusions can support a jury finding of causation as long as the doctor's conclusory opinion is based upon well-founded methodologies").
 
 
 19
 Courts have not required the proof or expert testimony concerning causation in toxic tort cases to be supported by epidemiological studies establishing a cause-effect relationship. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 980 n. 2 (4th Cir.1987); Wells v. Ortho Pharmaceutical Corp., 788 F.2d 741, 745 (11th Cir.), cert. denied, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); Ferebee v. Chevron Chem. Co., 736 F.2d 1529, 1535-36 (D.C.Cir.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). The exception from this rule is this court's recent holding that absent statistically significant epidemiological proof that the drug Bendectin is a human teratogen, a plaintiff's proof that the drug caused her child's birth defects was insufficient. See Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307 (5th Cir.), modified, 884 F.2d 166 (5th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1511, 108 L.Ed.2d 646 (1990). The court, however, specifically declined to hold that "epidemiologic proof is a necessary element in all toxic tort cases." Id. at 313. Legal standards of proof have not yet reached the point where a toxic tort plaintiff may establish causation only through statistically significant epidemiological studies, thereby rendering unreliable expert testimony based on anything except such studies. Cf. Ferebee, 736 F.2d at 1536 (noting that "the test for allowing a plaintiff to recover in a tort suit ... is not scientific certainty but legal sufficiency"). Moreover, we will not extend Brock. We simply apply this court's traditional position that "[a]n expert's opinion need not be generally accepted in the scientific community before it can be sufficiently reliable and probative" to be submitted to the jury and perhaps support a jury finding. Osburn, 825 F.2d at 915.
 
 
 20
 Dr. Miller's conclusions were not so "fundamentally unsupported" that they would be of no assistance to the jury in reaching a verdict. The questions defendants raise concerning the bases for the conclusions are issues properly presented to and considered by the jury, but they do not render the opinion unreliable and therefore inadmissible. The district court erred in its decision to strike Dr. Miller's opinion evidence.
 
 C.
 
 21
 Without discussion, the district court also stated that "[p]erhaps another way of reaching the same inevitable result is to determine that even if Dr. Miller's testimony were accepted as having some usefulness, it would still constitute no evidence that any Defendant knew or should have known of a danger sufficient to require a warning." To the contrary, Dr. Miller's affidavit and deposition testimony that indicate the potential carcinogenicity of nickel and cadmium also suggest that the risks of exposure may have been known as early as 1976. The record contains no evidence, however, that Marathon or its suppliers ever provided persons who would be exposed to the chemicals with a warning of these risks.[4]
 
 
 22
 We sustain the dismissal of plaintiffs' claims of design and manufacturing defects. Otherwise, the judgment is reversed and the cause is remanded.
 
 
 23
 REVERSED and REMANDED.
 
 
 
 [1]
 Plaintiffs do not challenge the court's ruling that they failed to raise an issue of defective design or manufacture of the chemicals and other materials used in the production of the batteries
 
 
 [2]
 The district court couched its decision in the language of Rule 403 and Rule 703 of the Federal Rules of Evidence, stating: "Dr. Miller's testimony should be stricken as it is not based upon the type of evidence usually relied upon by experts in the field of cancer research. The introduction of Dr. Miller's testimony at a trial would be more prejudicial than probative." A review of the court's memorandum opinion, however, reveals that the court did not distinguish between the Rule 403 and Rule 703 analysis and simply excluded the testimony after it determined that the expert opinion as a whole, rather than the individual sources of information on which the expert based his conclusions, was unreliable. Under these circumstances, our task is to determine whether the district court properly held that Dr. Miller's testimony was so unreliable as to justify its exclusion
 
 
 [3]
 In setting forth this conclusion, the court quotes from the affidavit of Dr. Rudders. The portion of that affidavit from which the quote is taken, however, deals not with Dr. Miller's analysis regarding the origin of small cell carcinoma but with the need for epidemiological or animal studies linking nickel and cadmium exposure specifically to colon cancer
 
 
 [4]
 Marathon suggests that we should affirm the grant of summary judgment as to it even if we reverse the judgment as to the other defendants. Marathon points out that it can be held liable only if it was grossly negligent, see Tex.Rev.Civ.Stat.Ann. art. 8306 Sec. 5 (Vernon 1967), and contends that gross negligence can be shown only through expert testimony. On this record, we cannot conclude that there is no genuine issue of fact as to whether Marathon was grossly negligent