**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

v.

**ATLAS VAN LINES, INC., a corporation and Thomas Van & Storage, Inc., a Corporation, Defendants.**

No. 3:90–CV–0467–P.

United States District Court, N.D. Texas, Dallas Division.

May 11, 1993.

Simon W. Oderberg, I.C.C., Fort Worth, TX, for plaintiff.

Timothy J. Herman and Elizabeth Zeck, Brown Maroney & Oaks Hartline, Austin, TX, for defendants.

### MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are:

Plaintiff's Resubmission of its Motion For Summary Judgment, filed on November 20, 1991.

Plaintiff and Defendant Atlas Van Lines, Inc.'s ("Atlas") Joint Notice of Resubmission of Cross–Motions For Summary Judgment, in which the parties advised the Court that Judge Sidney A. Fitzwater had approved the parties' joint request that the case be submitted for cross-motions for summary judgment rather than by trial, filed on November 26, 1991. The parties filed the following documents pursuant to Judge Fitzwater's Order:

(1) Agreed Statement of Facts, filed on August 12, 1991

(2) Plaintiff's Motion for Summary Judgment, filed on August 29, 1991.

(3) Atlas' Motion for Partial Summary Judgment, filed on August 30, 1991.

(4) Plaintiff's Reply to Atlas' Motion, filed on September 19, 1991.

(5) Atlas' Response to Plaintiff's Motion, filed on September 25, 1991

### I. UNDISPUTED FACTS

1. This action arises, and the jurisdiction of this Court is invoked, under the provisions of 28 U.S.C. § 1345, 49 U.S.C. § 11702, and under the general laws and rules relative to suits in equity arising under the Constitution and laws of the United States.

2. Venue is not disputed.

3. Since 1948, defendant Atlas Van Lines, Inc. ("Atlas") has operated as a motor common carrier of property (household goods) in interstate or foreign commerce for compensation pursuant to authority issued by plaintiff, the Interstate Commerce Commission ("I.C.C.").

4. Atlas has agency agreements with hundreds of agents nationwide, each of whom operate as motor common carriers of property (household goods) in interstate or foreign commerce for compensation pursuant to their agreements with Atlas. Through these agency agreements and through direct leases between Atlas and individual owner-operators, approximately 2500 motor vehicles move household and other property under the Atlas name.

5. Until October 30, 1989, defendant Thomas Van & Storage, Inc. ("Thomas") was one of those agents. At that time, Atlas terminated Thomas' agency relationship because of Thomas' on-going financial problems. The Atlas–Thomas agency agreement contained "hold harmless" clause in favor of Atlas.

6. By letter of March 2, 1989, the I.C.C. notified Atlas owner-operator William Brockway had filed a complaint alleging that he had not been paid for transporting Atlas shipments on behalf of Thomas. The I.C.C. also demanded that Atlas accept responsibility for the final settlement payment, notwithstanding the fact that Brockway was working for an agent.

7. Atlas responded that Thomas admitted owing Brockway, which Thomas had not paid due to its own financial difficulties. Atlas also pointed out that Thomas was also indebted to Atlas and that Atlas thus had no funds available from Thomas to pay Brockway.

8. The present suit was filed by the I.C.C. on February 27, 1990. On March 26, 1990, Thomas filed a Voluntary Petition under chapter Seven of the United States

Bankruptcy Code. That case, filed in this District as No. 390–31982–HCA–7, is pending.

9. Upon the filing of its bankruptcy petition, Thomas ceased to do business as a motor common carrier of household goods in interstate or foreign commerce for compensation.

10. Since the termination of its agency relationship with Thomas, Atlas has had no dealings with Thomas except to assert its claims as a creditor against the Thomas bankruptcy estate.

| Lessor | Principal Amount | % As of 7/1/91 | Total |
|---|---|---|---|
| Ernest Hall | $7,184.65 | $1,690.60 | $8,875.25 |
| William Brockway | $5,979.07 | $1,410.21 | $7,389.28 |
| Hollie Marcum | $2,463.38 | $ 577.66 | $3,041.04 |

13. The Owner–Operators each gave Thomas $1,500.00 deposit in escrow fund accounts to guarantee their respective performance on trips made in Thomas' service under its Agency Agreement with Atlas. These funds were deposited on the following dates:

Ernest Hall . . . . . . . . . . . . . . . March 23, 1988
William Brockway . . . . . . . . . . . July 8, 1988
Hollie Marcum . . . . . . . . . . . . September 1, 1988

14. The Owner–Operators terminated their leasing arrangements on the following

11. The I.C.C. conducted an investigation of records kept by Thomas. During this investigation, no written owner-operator leasing agreements were found for use in the transportation of property (household goods) in interstate commerce.

12. The following vehicle owners or lessors ("the Owner–Operators") were not paid within 15 days of the submission of the necessary delivery documents and other paperwork concerning trips made in Thomas' service under its Agency Agreement with Atlas. These lessors have never been paid and are still owed the following amounts, (including interest):

dates:

Ernest Hall . . . . . . . . . . . . . October 13, 1988
William Brockway . . . . . . . . . December 7, 1988
Hollie Marcum . . . . . . . . . . . . March 24, 1989

15. Although more than 45 days have passed since the termination of the Owner–Operators' leasing agreements, the escrow funds have never been returned.

16. No interest has been paid to the Owner–Operators.

17. The amounts still owed to the vehicle owners or lessors for escrow funds accounts, including interest, are as follows:

| Lessor | Principal Amount | % As of 7/1/91 | Total |
|---|---|---|---|
| Ernest Hall | $1,500.00 | $323.64 | $1,823.64 |
| William Brockway | $1,500.00 | $272.89 | $1,772.89 |
| Hollie Marcum | $1,500.00 | $208.05 | $1,708.05 |

18. The I.C.C. has conducted two other investigations of the handling of owner-operator settlement payments and/or escrow funds by Atlas and its agents. The first involved Atlas and its agent Nelson–Westerburg, Inc., and resulted in Atlas and Nelson–Westerburg, signing an Agreement of Settlement on June 29, 1987, acknowledging their failure to comply with I.C.C. regulations and agreeing to refrain from further non-compliance. The second investigation was conducted in 1990 and involved the handling of payments to owner-operators by Atlas agents and by Atlas under direct-lease agreements. The matter was handled administratively (i.e. without formal enforcement action) and resulted in Atlas' establishment of a compliance program. This program requires agents to

submit their owner-operator agreements to Atlas for review by a full-time compliance officer who will enforce the "Truth-in-Leasing" regulations of the I.C.C.'s lease and interchange regulations among Atlas agents. The compliance officer is further authorized to audit agents' records for compliance with the lease and interchange regulations. The new compliance program does not require Atlas to pay the owner-operators should the agents fail to do so.

19. The I.C.C. has conducted no other investigations and knows of no other Atlas agent which has failed to obtain written lease agreements, to pay owner-operators for services rendered, or to refund or pay interest on escrow funds.

20. At all times relevant to this action, the following statutes and regulations were in effect: 49 U.S.C. § 10934, 49 C.R.R. part 1057.

## II. STATUS OF CASE

Atlas has paid into the Court registry all of the money in dispute between the parties. Since the money damages issue has been settled to the satisfaction of all parties, the only remaining issue is whether Plaintiff should be granted the injunctive relief sought against Atlas.

## III. SUMMARY JUDGMENT REQUIREMENTS

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. As the Fifth Circuit stated in *Christophersen v. Allied–Signal Corp.*, 902 F.2d 362, 364 (5th Cir. 1990), "[b]efore a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the plaintiff's case."

█ If the moving party bears the burden of proof on a claim or defense upon which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1194 (5th Cir.1986).

█ Where the nonmovant bears the burden of proof at trial, the movant may discharge its burden by showing, that is, by pointing out to the court, that there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Where the nonmovant bears the burden of proof at trial, the movant is not required to produce evidence to negate the opponent's claims. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990). For that reason, there is no burden on the movant to support its motion with affidavits or other similar materials where the nonmovant will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Rather, the movant need only demonstrate that the evidence which does exist does not "present a sufficient disagreement to require submission to a jury . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2511–2512, 91 L.Ed.2d 202, 214 (1986).

Federal Rule of Civil Procedure 56(e) prescribes what form the non-movant's response must take in order to defeat a properly pled and supported motion for summary judgment or partial summary judgment:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse part does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e).

## IV. ARGUMENTS

Plaintiff alleges that Atlas violated at least seven ICC regulations:

(1). 49 C.F.R. § 1057.12(k)(5)—Requires payment of interest on escrow funds.

(2). 49 C.F.R. § 1057.12(k)(6)—Requires return of escrow funds within 45 days of termination.

(3). 49 C.F.R. § 1057.12(f)—Requires that the owner-operator be paid a trip settlement within 15 days of submitting the required paperwork.

(4). 49 C.F.R. § 1057.11—Prohibits a carrier from performing transportation in non-owned equipment except under certain conditions.

(5). 49 C.F.R. § 1057.11(a)—Requires a written lease.

(6). 49 C.F.R. § 1057.12(1)—Requires an original and two copies of lease to be executed, with original retained by carrier.

(7). 49 C.F.R. § 1057.12(m)—Requires carrier to ensure that owner-operators receive all the rights and benefits afforded by the leasing regulations of the statute.

Plaintiff contends in its Motion for Summary that it is entitled to general injunctive relief pursuant to specific statutory authorization: 49 U.S.C. § 11702. Plaintiff argues that the standard for determining injunctive relief is based on the public interest, citing *Hecht Co. v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Plaintiff contends that the purpose of the injunction is to prevent subsequent violations of the ICC regulations by Atlas, citing several non-Fifth Circuit federal district court decisions in support.

Plaintiff argues that the Court can consider past violations in determining whether there is a cognizable danger of recurrent violations, citing *U.S. v. W.T. Grant,* 345 U.S. 629, 634–635, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). Those past violations by Atlas, involving agents other than Thomas, support injunctive relief because they amount to a pattern of non-compliance, that Atlas has been unwilling to prevent violations of ICC regulations by its agents.

Plaintiff argues that Atlas has known, even prior to the enactment of 49 C.F.R. § 1057.-12(m), that if the statute passed, it would be ultimately liable for the leases entered into between its agents and the owner-operators.

See, Exhibit C of Plaintiff's Brief in Support of Summary Judgment, "Comments By Atlas Van Lines, Inc." Before The Interstate Commerce Commission, filed on April 12, 1980. Nevertheless, notwithstanding Atlas' acknowledgment of the import and impact of 49 C.F.R. § 1057.12(m), Plaintiff points out Atlas has been investigated three times since the statute was promulgated, including the instant occasion, and each time Atlas has been found in violation in the statute. And, specifically with respect to the instant case, Atlas was especially intransigent about satisfying the indebtedness of at least one of Thomas' owner-operators, Brockway, arguing to the ICC that the debt was the sole responsibility of Thomas. Such a stance, Plaintiff contends, is untenable given Atlas' written acknowledgment as early as 1980 that it would be liable to Brockway in such a circumstance.

In its Motion for Partial Summary Judgment, Atlas concedes liability with respect to violating ICC regulations. But Atlas seeks summary judgment with respect to ICC's claims for general injunctive relief. Atlas makes the equitable argument that because all three of the owner-operators whose claims have been satisfied by Atlas in the case at bar were agents of bankrupt Defendant Thomas Van Lines ("Thomas"), which no longer operates as an agent of Atlas, the issue of preventing the continuing violations by Thomas is moot; there is no need for Atlas to bear the burden and onus of an injunction, to prevent a reoccurrence of violations by Thomas, when Thomas is now bankrupt and no longer has an agency relationship with Atlas, citing *ICC v. B.T. Transportation. Co.,* 613 F.2d 1182, (1st Cir.1980).

Atlas argues that injunctive relief of the kind sought by Plaintiff is available only if there is a cognizable danger of a future violation by Atlas, not a mere possibility, citing *Connecticut v. Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931). Atlas contends, moreover, citing *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974), that a past violation alone does not support injunctive relief.

776

Atlas objects, in particular, to Plaintiff's request for an injunction restricting Atlas' agency agreements with entities other than Thomas, arguing that Plaintiff has not made an adequate showing that Atlas' other agents have committed regulatory violations like Thomas, citing *NLRB v. Express Publishing Co.*, 312 U.S. 426, 433, 61 S.Ct. 693, 698, 85 L.Ed. 930 (1941), *Communications Workers of America v. NLRB*, 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960), and three non-Fifth Circuit appellate opinions in support.

Atlas argues that Plaintiff has produced no evidence that any of its agents are *currently* violating the ICC regulations. The two instances of non-compliance by Atlas agents other than Thomas that Plaintiff cited were settled with the ICC, and there has been no recurrence of non-compliance · by those agents. Moreover, Atlas contends that there will be fewer instances of non-compliance in the future because Atlas has created a compliance program to help its agents meet ICC leasing regulations.

Finally, Atlas argues that the general injunction sought by Plaintiff would place Atlas in the untenable position of being subject to contempt every time that one of its agents violates one of the ICC leasing regulations, however minor that violation may be, and whether or not there are justifiable reasons for the violation. As a practical matter, Atlas contends, it cannot, even on pain of contempt, guarantee compliance by all of its agents in perpetuity.

## V. DISCUSSION

■ Whether or not an injunction should be granted is in the sound discretion of the Court. *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir.1989).

■ The Court agrees with Plaintiff that Atlas has a history of recalcitrance of accepting the dictates of 49 C.F.R. § 1057.12(m), and other ICC regulations governing Atlas' relationship with its agents and owner-operators. If every time that Plaintiff has investigated Atlas since passage of the statute, Atlas has been found culpable of violating those regulations, then that constitutes a cognizable danger of future violations by Atlas

as contemplated by the Supreme Court in *U.S. v. W.T. Grant, supra.*

Atlas' argument that it is not *currently* violating the statute rings hollow when the prior violations are considered. Moreover, "it is well-settled that, in a suit for injunctive relief, the voluntary cessation of allegedly illegal conduct does not moot the controversy arising from the challenged activity. [citations omitted]. This is because the '[t]he defendant is free to return to his old ways' *Id.* 345 U.S. at 632, 73 S.Ct. at 897." *Donovan v. Cunningham*, 716 F.2d 1455, 1461 (5th Cir.1983).

The Court will not allow Atlas to return to its old ways. Atlas has come to the dinner table of equity with unclean hands, and cannot now complain when made to wash up with the soap and water of a permanent injunction.

## VI. RULING

Having considered the law and evidence, the Court **GRANTS** Plaintiff's Motion For Summary Judgment and **ORDERS** that Atlas be permanently enjoined from violating the conditions and requirements of the ICC regulations discussed above. Plaintiff will prepare and forward to the Court, within thirty (30) days of filing this Memorandum Opinion and Order, an Order of Injunction consistent with this Memorandum Opinion and Order.

**SO ORDERED.**