**OWNER–OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., Plaintiffs,**

v.

**ARCTIC EXPRESS, INC., et al., Defendants.**

**No. 97–CV–750.**

United States District Court, S.D. Ohio, Eastern Division.

July 11, 2003.

James Burdette Helmer, Jr., Helmer, Martins & Morgan, Cincinnati, OH, Paul D. Cullen, Sr., Gregory Michael Cork, Thomas Patrick McCann, Joyce E. May-ers, Cullen Law Firm, Washington, DC, for Plaintiffs.

Mark Alan Johnson, Thomas Leslie Long, A. Charles Tell, Baker & Hostetler, Columbus, OH, for Defendants.

### *OPINION AND ORDER*

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Motion of Defendants Arctic Express, Inc. ("Arctic") and D & A Associates, Ltd. ("D & A") for Partial Summary Judgment. The Defendants seek summary judgment on the claims of Plaintiff Carl Harp, individually, as well as the claims of all other class members whose claims are based on lease-purchase agreements entered into with D & A before January 1, 1996, the effective date of the Interstate Commerce Commission Termination Act. The Defendants argue that they are entitled to summary judgment because that statute may not be retroactively applied to agreements entered into before its effective date.

For the following reasons, the Court **DENIES** the Defendants' Motion for Partial Summary Judgment.

## II. BACKGROUND[1]

### A. Factual Background

In June 1997, the Plaintiffs filed this action asserting, *inter alia,* that Arctic and D & A had violated the truth-in-leasing regulations by failing to return escrow funds collected from independent truck drivers ("owner-operators") for the sole purpose of satisfying their maintenance obligations for equipment leased from D & A. Plaintiff Carl Harp entered into a Lease

---

1. At this point in the litigation, the Court is intimately familiar with the facts of this case. For a complete recitation of the facts, refer to this Court's September 6, 2001 Opinion and Order granting the Plaintiffs' Motion for Class Certification.

Agreement and Lease/Purchase Agreement with Arctic and D & A in March 1994. He terminated his contractual relationship with the Defendants in March 1995. Plaintiff Harp and the other named Plaintiffs represent a class of owner-operators,[2] some of whom, like Plaintiff Harp, entered into and terminated their contracts with the Defendants prior to January 1, 1996. Other members of the class entered into their contracts prior to January 1, 1996, but terminated their contracts after that date. Still other class members entered into and terminated their contracts after January 1, 1996.

This Court has already determined that the nine cents per mile collected for the purpose of maintaining leased equipment was an "escrow fund" as defined by the truth-in-leasing regulations, and that this maintenance escrow fund was subject to the requirements of the federal leasing regulations. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 87 F.Supp.2d 820, 830–31 (S.D.Ohio 2000). Further, the Court has concluded that the Defendants' failure to return the maintenance escrow funds to class members whose agreements did not run full term constituted an early termination penalty in violation of 49 C.F.R. § 376.12(k). *See Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 159 F.Supp.2d 1067, 1076 (S.D.Ohio 2001) (finding that the Defendants had "absconded with the Plaintiffs' escrow funds").

### B. Legal Background

In 1973, in response to a strike by the nation's owner-operators, the Interstate Commerce Commission ("ICC") began hearings, studies, and a rulemaking proceeding regarding the relationships between owner-operators and the motor carriers from whom they lease equipment. *See Global Van Lines, Inc. v. Interstate Commerce Comm'n,* 627 F.2d 546, 547 (D.C.Cir.1980) (setting forth the history of the truth-in-leasing regulations). Six years later, in 1979, the ICC promulgated the truth-in-leasing regulations, which still exist in substantially the same form today.[3] *Id.* at 549. The regulations require, *inter alia,* that leases entered into between owner-operators and motor carriers contain certain provisions. Of particular importance to the matter now before the Court, the regulations mandate that, if escrow funds are required for the lease, the lease specify that the motor carriers are to pay interest on the escrow funds in the owner-operator's account, and that escrow funds are to be returned no later than forty-five days from the date of the termination of the lease. 49 C.F.R. § 376.12(k)(1)-(6).

Prior to 1996, the ICC had plenary power to enforce the regulations, including the authority to seek court enforcement of a carrier's obligation to safeguard, account for, pay interest on, and eventually return escrow funds. In particular, the prior version of 49 U.S.C. § 11701(a) authorized the ICC to initiate an investigation of a carrier's alleged violation either on its own authority or upon a complaint by an owner-operator, and take "appropriate action" to compel the carrier's compliance. In addition, the prior version of 49 U.S.C.

---

**2.** On September 6, 2001, the Court certified a class, defined as follows:

> All independent truck owner-operators who have (1) entered agreements with Defendant D & A Associates, Ltd., which purport to lease, with the option to purchase, trucking equipment under the terms of D & A's equipment lease/purchase agreement, and (2) leased that equipment to Defendant Arctic Express, Inc. under the terms of Arctic's federally-regulated motor carrier lease agreement.

Sept. 6, 2001 Opinion and Order, at 9.

**3.** In 1996, the regulations were redesignated from 49 C.F.R. Part 1057 to Part 376 without substantive change.

§ 11702(a) authorized the ICC to bring civil actions to enforce its regulations.

On January 1, 1996, the Interstate Commerce Commission Termination Act ("ICCTA") went into effect, and terminated the ICC as an agency. Pub.L. No. 104–88, 109 Stat. 803 (1995), codified at 49 U.S.C. § 10101 et seq. Some of the ICC's previously held authority, including authority over the truth-in-leasing regulations, was transferred to the Department of Transportation, Federal Highway Administration. 49 U.S.C. § 13501. One of Congress's goals in enacting the ICCTA was to alleviate certain drains on government resources by taking the federal government out of the business of dispute resolution, and providing a judicial forum for the adjudication of claims arising under the motor carrier leasing regulations.[4] Accordingly, the ICCTA authorized owner-operators to bring private causes of action against carriers for certain violations of the Motor Carrier Act and its implementing regulations. 49 U.S.C. § 14704(a); see Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc., 87 F.Supp.2d 820, 825 (S.D.Ohio 2000) (citing Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 192 F.3d 778, 785 (8th Cir.1999), for the proposition that 49 U.S.C. § 14704(a) authorizes private actions for some violations of the Motor Carrier Leasing Act and its regulations).

As this Court has previously recognized, the Plaintiffs bring their claims against the Defendants pursuant to the ICCTA, 49 U.S.C. §§ 14101–02 and 14704. This matter is now before the Court on the Motion of Defendants Arctic and D & A for Partial Summary Judgment with respect to the claims brought by Plaintiff Harp and all other class members whose claims are based on lease-purchase agreements entered into with D & A before January 1, 1996, the date the ICCTA went into effect. The Defendants argue that partial summary judgment is warranted because the ICCTA cannot be applied retroactively to those claims.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir.2001). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is

---

4. In its 1995 Report, the Committee on Transportation and Infrastructure stated:

> The bill transfers responsibility for all the areas in which the ICC resolves disputes to the Secretary [of the DOT] (except passenger intercarrier disputes). The Committee does not believe that DOT should allocate scarce resources to resolving these essentially private disputes, and specifically directs that DOT should not continue the dispute resolution functions in these areas. The bill provides that private parties may bring actions in court to enforce the provisions of the Motor Carrier Act. This change will permit these private, commercial disputes to be resolved the way that all other commercial disputes are resolved-by the parties.

H.R.REP. No. 104–311, at 87–88 (1995).

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). The mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

■ There exists within our nation's jurisprudence a presumption against retroactive legislation. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 842–44, 855–56, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring)). This presumption arises from the fact that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* (citations omitted). The presumption will be overcome, however, when Congress has clearly intended for a statute to be applied to conduct that predated its enactment. *Bejjani v. Immigration & Naturalization Serv.,* 271 F.3d 670, 676 (6th Cir.2001) (citations omitted).

Congress has not clearly expressed an intent for the ICCTA to be applied retroactively. Nonetheless, before applying the foregoing presumption, the Court must first determine whether the provisions of the ICCTA relied upon by the Plaintiffs have any retroactive effect at all. As the Supreme Court recognized in *Landgraf,* there is no simple or mechanical method of determining which statutes operate retroactively. *Landgraf,* 511 U.S. at 268–69, 114 S.Ct. 1483 (acknowledging that a statute "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment") (citation omitted).

■ As Justice Story wrote, a statute with retroactive effect is one "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483 (quoting *Soc'y for Propagation of the Gospel v. Wheeler,* 22 F. Cas. 756, 767 (No. 13, 156) (C.C.D.N.H.1814) (internal citations omitted)). Thus, to determine whether a statute operates retroactively, courts must examine whether the new provision attaches new legal consequences to events completed before its enactment. *Id.* at 270, 114 S.Ct. 1483. In making this determination, courts should take into account considerations of fair notice, reasonable reliance, and settled expectations. *Id.* Thus, "[t]he conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.*

■ The Court finds that the ICCTA has no retroactive effect as it neither takes away nor impairs vested rights, nor creates a new obligation or duty, nor attaches

a new disability with respect to actions taken prior to its promulgation. The duty imposed on the Defendants to return escrow funds within forty-five days is not new, as the truth-in-leasing regulations have imposed this obligation on the Defendants since 1979. Furthermore, the fact that the statute allows the Defendants to be brought into federal court and required to reimburse owner-operators for funds wrongfully withheld does not constitute a new disability, as the regulations in effect prior to the promulgation of the ICCTA provided for the same means of enforcement. Rather than attaching a new disability, the ICCTA simply shifted the power to bring the Defendants into court from the ICC to the owner-operators themselves. *See Interstate Commerce Comm'n v. Atlas Van Lines, Inc.*, 825 F.Supp. 771 (N.D.Tex.1993) (involving a claim brought against a carrier by the ICC after an owner-operator had filed a complaint with the ICC based on the carrier's failure to pay interest and failure to return escrow funds within forty-five days of the termination of the leasing agreements).[5]

Moreover, the fact that the Plaintiffs here are seeking the same remedy from the Defendants that the ICC could have previously sought on their behalf—a return of the escrow funds with interest—makes this case distinguishable from *Landgraf*. In *Landgraf*, the district court found in favor of the defendant after the plaintiff brought a claim against her employer for the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. While the plaintiff's appeal was pending, the Civil Rights Act of 1991, which provided for compensatory and punitive damages for Title VII plaintiffs where only equitable relief had previously been available, was enacted. On appeal, the plaintiff argued that her case should be remanded for a jury trial on damages pursuant to the 1991 Act. The Supreme Court rejected that argument, and held that the damages provision of the 1991 Act could not be retroactively applied to the plaintiff's claim. *Id.* at 283–86, 114 S.Ct. 1483. In holding that the 1991 Act could not be retroactively applied, the Supreme Court recognized that the introduction of the right to compensatory damages is the type of legal change that imposes a significant legal burden on the defendant and affects the parties' planning when they choose to engage in certain conduct. *Id.* at 282, 114 S.Ct. 1483.

Unlike the plaintiff in *Landgraf*, the Plaintiffs here do not seek a remedy above and beyond that which would have been available prior to the enactment of the ICCTA. Though now labeled "damages," as opposed to being designated as the equitable remedy of the return of the overcharge, the remedy sought by the Plaintiffs is the same as that which could have been sought by the ICC: the return of the escrow funds plus interest. The fact that the remedy they seek is now deemed to be legal rather than equitable does not

---

**5.** Although the only remedy sought in court by the ICC in *Atlas Van Lines* was an injunction to prevent the Defendant from engaging in the mishandling of escrow funds in the future, that case nonetheless indicates that the ICC had the authority to seek the same type of remedy the Plaintiffs now seek. In *Atlas Van Lines*, only the injunction was in issue because the "damages" portion of the dispute was settled without judicial intervention. The court in that case recognized that, "Atlas has paid into the Court registry all of the money in dispute between the parties. Since the money damages issue has been settled to the satisfaction of all parties, the only remaining issue is whether Plaintiff should be granted injunctive relief." *Atlas Van Lines*, 825 F.Supp. at 774. Thus, the fact that the "money damages issue" was not a part of the court's ruling does not mean that money damages were not sought by the ICC.

change the fact that, at the time the contracts were entered into prior to 1996, the Defendants were aware that, if they wrongfully withheld escrow funds from owner-operators, they could be liable in the amount they withheld plus interest. In other words, at the time the Plaintiffs entered into their lease agreements, Arctic and D & A, unlike the defendant in *Landgraf*, were aware that they could be held liable for the remedy now sought. To find that the designation of this liability as legal rather than equitable changes the substantive rights of the parties, or attaches a new disability to the Defendants' prior conduct, would be to exhort form over substance.

The Defendants argue that, even if the same remedy could have previously been sought by the ICC, the fact that the claims may now be brought directly by owner-operators, rather than by the ICC after a petition by owner-operators, means that the ICCTA alters the substantive rights of the parties in a material manner, so as to make retroactive application of the statute improper. In making this argument, the Defendants rely on *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), in which the Supreme Court held that, when a statute expanded the class of plaintiffs who could bring a claim for certain conduct by the defendant, the statute altered the defendant's substantive rights, and could not be applied retroactively. *Id.* at 949–50, 117 S.Ct. 1871 ("In permitting actions by an expanded universe of plaintiffs with different incentives, the [new statute] essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued.").

At issue in *Hughes Aircraft* was an amendment to the False Claims Act. Prior to 1986, *qui tam* suits were barred if the information upon which they were based was already known to the government. A 1986 amendment, however, allowed *qui tam* suits even when the relevant information was already known to the government, except under very limited circumstances. *Hughes Aircraft*, 520 U.S. at 941, 117 S.Ct. 1871. The Defendants assert that, like the statute at issue in *Hughes Aircraft*, the ICCTA alters the parties' rights and operates retroactively by allowing owner-operators to bring claims directly against motor carriers, which they could not have done prior to the enactment of the statute. This case, however, is distinguishable from *Hughes Aircraft*.

In finding that the amendment to the False Claims Act altered the substantive rights of the parties by expanding the universe of plaintiffs who could bring claims against the defendant, the *Hughes Aircraft* Court noted that, prior to the promulgation of the new statute, the plaintiff's claim would have been completely barred. *Hughes Aircraft*, 520 U.S. at 950, 117 S.Ct. 1871. That is not the case here. Prior to January 1, 1996, the Plaintiffs could have pursued their claims by complaining to the ICC, so that the ICC could bring a claim on their behalf. *See Atlas Van Lines, Inc.*, 825 F.Supp. 771 (involving a claim brought against a carrier by the ICC after an owner-operator had filed a complaint with the ICC based on the carrier's failure to pay interest and failure to return escrow funds within forty-five days of the termination of the leasing agreements).[6]

---

**6.** The Court recognizes that, under the prior version of 49 U.S.C. § 11701(b), the ICC had the authority to dismiss a complaint that it determined did not state reasonable grounds for investigation and action. Although the ICCTA does not explicitly require a showing of reasonable grounds before owner-operators bring their claims in federal court, that threshold showing is implicitly required by the strictures of Rule 11 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 11(b)(3) (requiring that all allegations and factual con-

The fact that the Plaintiffs had a right to pursue a remedy through the ICC for the conduct of the Defendants prior to the promulgation of the ICCTA illustrates the incongruity of extending the holding of *Hughes Aircraft* to these circumstances. If the Court were to conclude that the Defendants are correct, and that *Hughes Aircraft* requires a finding that the ICCTA operates retroactively by expanding the class of plaintiffs who can bring claims against the Defendants, the Plaintiffs would have no recourse where they previously would have had a remedy for the wrong committed against them. Under the Defendants' theory, the Plaintiffs who entered into contracts prior to 1996 could have pursued a remedy by filing a complaint with the ICC while that agency was still in existence, and the Plaintiffs who entered into contracts after January 1, 1996 can pursue a remedy by bringing suit directly, as they have done. According to this theory, owner-operators who entered into contracts prior to January 1, 1996, but waited to bring suit until after the ICCTA went into effect are left without a remedy for the Defendants' conduct. By eliminating the ICC and the burden on the government to bring such causes of action on behalf of owner-operators, Congress could not have intended to create such a gap in the Plaintiffs' ability to vindicate their rights.

Therefore, the Court finds that the ICCTA does not have an improper retroactive effect, and, accordingly, **DENIES** the Defendants' Motion for Partial Summary Judgment.

tentions presented to the court have "evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"). Therefore, the Plaintiffs

## V. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** the Defendants' Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

have no less of a burden to establish a valid factual basis for their claim under the ICCTA than they would have had under the prior statute.