NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0253n.06

No. 12-3491

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 02, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOC., INC., et al., | ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| COMERICA BANK, | ) ) | **OPINIONS** |
| Defendant-Appellant. | ) ) ) | |

BEFORE:  MOORE and COOK, Circuit Judges; GWIN, District Judge.[*]

**JAMES S. GWIN, District Judge.**  In this case, Defendant Comerica Bank appeals from a $5,583,084 judgment the district court gave Plaintiffs after a non-jury trial.  With this appeal, we look to whether sufficient evidence supported the district court's finding that the statute of limitations did not bar the lawsuit.

In an opinion earlier in the district court case, the district court found Comerica Bank was liable for $5,583,084 on a breach of trust theory, but then gave Comerica Bank judgment on other grounds.  The Plaintiffs appealed that decision.  Comerica Bank never cross appealed the district court's $5,583,084 damage finding in the first appeal and this Court tacitly accepted the $5,583,084

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

damage calculation when we reversed the district court's judgment for Comerica. Now, we also consider whether Comerica Bank waived a challenge to the damage computation and whether that damage computation became the law of the case after the first appeal.

As described, this is the second appeal in a case involving Owner-Operators' Independent Drivers Association ("Owner-Operators") members' escrow maintenance funds. After an earlier appeal, we found that Comerica Bank had breached a trust obligation to the Owner-Operators but remanded the case to the district court to decide if the statute of limitations barred the Plaintiffs' claims.

After remand following the first appeal and after the parties waived a jury trial, the district court found this lawsuit was timely and gave Plaintiffs Owner-Operators judgment. Defendant Comerica Bank now appeals the district court's judgment awarding $5,583,084 to Plaintiffs Owner-Operators. Comerica Bank says that the district court erred when it: (1) concluded that the statute of limitations does not bar the claim against Comerica; (2) awarded damages based on a retroactive application of the private right of action under the Interstate Commerce Commission Termination Act ("ICCTA"); (3) refused to allow Comerica to challenge the amount of damages; and (4) made an excessive award of prejudgment interest. For the reasons that follow, we **AFFIRM** the district court's judgment with respect to the statute-of-limitations, ICCTA-retroactivity, and prejudgment-interest issues.

Judge Cook and Judge Moore find that this case should be remanded to the district court to determine damages. I respectfully dissent from the majority's conclusions regarding the damages determination and I would find that Comerica waived its right to challenge the damage calculation

2

when Comerica failed to appeal an earlier and specific finding that Comerica Bank had taken

$5,583,084, of Plaintiffs funds.

## I. BACKGROUND

### A.     Factual Background

This Court's previous opinion outlines the case's background:

> This lawsuit has its origins in a $5.5 million class action settlement agreement that Arctic and its affiliate, D & A Associates Ltd. ("D & A"), entered into with Plaintiffs, representatives of a certified class of "owner-operators," who independently own, lease, and operate motor carrier equipment for the transportation of commodities. . . .

> The underlying basis for the class action suit was the owner-operators' contractual arrangement with Arctic and D & A. . . . Under the agreements, . . . the owner-operator agreed to have Arctic deduct a flat fee of nine cents per mile from his or her compensation on a weekly basis for the purpose of repairing and maintaining the leased trucking equipment. . . . The maintenance payments were kept by Arctic in a maintenance escrow fund. . . .

> In June 1997, the owner-operators initiated a class action suit (the "Arctic Litigation") against Arctic and D & A in the United States District Court for the Southern District of Ohio, seeking monetary damages and other relief. The certified class of plaintiffs . . . alleged that Arctic and D & A violated the Truth in Leasing regulations of the Motor Carrier Act, 49 U.S.C. §§ 14101 02, 14704; 49 C.F.R. § 376 *et seq.,* by failing to return unused maintenance escrow fund balances to the class of owner-operators whose lease agreements with Arctic did not run full term. . . .

> In October 2003, Arctic and D & A filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio, thus halting the Arctic Litigation. Plaintiffs allege that in December 2003, through testimony given in the bankruptcy proceedings, they first learned of Arctic's financing arrangement with Comerica and Comerica's actions in transferring the maintenance escrow funds out of Arctic's depository accounts to repay amounts owed to it pursuant to its loan agreements with Arctic. . . .

3

In January 2004, plaintiffs commenced an adversary proceeding against Arctic, D & A, and Comerica in the bankruptcy court, seeking return of the escrow funds owed to the Arctic Litigation class members. The bankruptcy court lifted the automatic stay to allow the district court to complete the Arctic Litigation and liquidate the class claims, and, in May 2004, plaintiffs entered into a $5.5 million settlement agreement with Arctic and D & A, which was approved by the district court in July 2004. The settlement equaled the total amount of maintenance escrow funds, plus interest, owed by Arctic and D & A to the owner-operators . . . ."

*In re Arctic Express Inc.,* 636 F.3d 781, 786-89 (6th Cir. 2011) (footnotes omitted).

**B.      The Instant Action**

In January 2004, and while Arctic's bankruptcy case was pending, the Owner-Operators filed an adversary proceeding against Arctic, D & A, and Comerica in the bankruptcy court. The Owner-Operators sought the return of Plaintiffs' escrow funds from Arctic, D & A, and Comerica Bank. While this lawsuit was pending, the plaintiffs agreed to a $5.5 million settlement with Arctic and D & A in May 2004.

Comerica Bank never challenged the settlement amount although the bankruptcy court adversary complaint against Comerica Bank, Arctic, and D & A had asked the district court to "[e]nter judgment against Comerica Incorporated ordering that payment be made. . . to return the full amount in maintenance escrow funds plus interest in an amount equal to that awarded pursuant to final judgment entered by the District Court [in the Arctic and D & A case]."

The district court approved the settlement in July 2004. In approving the settlement, the district court found that the settlement amount reflected the total amount of maintenance escrow funds, plus interest, that Arctic and D & A owed to the Owner-Operators. The settlement agreement also said the Owner-Operators would not seek to recover more than $900,000 from Arctic. As the

4

district court described in the first decision, "Plaintiffs accepted this lower amount [from Arctic] with the express purpose of seeking the remainder of the settlement amount from Comerica."

After settling with the other two defendants, the Owner-Operators continued the lawsuit against Comerica and sought to enforce the judgment against Comerica Bank. In this litigation, Plaintiffs bring a single claim seeking restitution or disgorgement of the maintenance escrow funds deposited by Arctic into Comerica's accounts and purportedly used by Comerica to pay down Arctic's indebtedness.

### 1. 2009 District Court Summary Judgment Ruling

In the earlier litigation before the district court, Comerica first argued that the statute of limitations stopped the Plaintiff Owner-Operators' claims against Comerica. Next, Comerica argued that imposition of a trust obligation would retroactively apply a newly created private right of action for violation of Truth-in-Leasing provisions. Finally, Comerica said the settlement agreement did not stop Comerica from challenging "the validity and amount of the consent judgment."

#### a. Statute of limitations

In the summary judgment decision, the district court first considered Comerica Bank's argument that the Owner-Operators' claims were time-barred. After considering the parties' respective arguments and evidence, the district court found that a genuine issue of material fact existed as to whether Plaintiffs exercised reasonable diligence to discover facts that would cause the statute of limitations to accrue for its claim against Comerica.

### b.     ICCTA retroactivity

With regard to ICCTA, the district court found that "whether the ICCTA can be applied retroactively to pre 1996 leases is not even an issue in this case." The district court specifically found the Plaintiffs were not suing Comerica under the ICCTA, Instead, the Owner-Operators were bringing an action for restitution under the federal common law of trusts.

### c.     Damages

During the first round before the district court, the district court considered Comerica's arguments that Comerica Bank should not be bound by damages calculation agreed to in the settlement and approved by the district court. With that argument, Comerica Bank said "that Plaintiffs cannot rely on the doctrine of issue preclusion to establish the amount of Plaintiffs' alleged damages."

The district court rejected Comerica's argument, finding "[r]egardless of Comerica's lack of participation in the damages calculation in the Arctic Litigation, Plaintiffs can seek restitution of the judgment amount from Comerica." In reaching this conclusion, the district court reasoned " if this Court determines that Comerica withdrew funds from that account in breach of trust, then Comerica would be liable for the entire amount of trust property (provided Comerica is not a bona fide purchaser)."

The district court followed this reasoning: (1) Arctic held the escrow amounts in trust, the money was the drivers' property; (2) if Arctic or Comerica wrongfully used the drivers' money that Arctic held in trust for the drivers, the drivers had a right to the return of their money; and (3) if "this

Court determines that Comerica withdrew funds from that account in breach of trust, then Comerica would be liable for the entire amount of trust property."

During its ruling on summary judgment, the district court found that the Arctic Litigation "resolved issues regarding the rights and obligations relating to the maintenance escrows as between Arctic and the Class." The district court explained that in approving the settlement in the Arctic Litigation, it had determined that the methodology used to calculate the judgment amount was appropriate based on Arctic and D & A's records.

It found that the total potential damages for Comerica's alleged conduct with regard to trust property was $5,583,084, representing maintenance escrows plus interest.

### d.     Breach of trust

In its first decision, the district court looked to when the trust was created: "[w]as the statutory trust created when customers made payments into the cash collateral account, or was the statutory trust created when Arctic paid owner-operators their compensation?" The district court found that no trust was created until compensation was paid to the employees. Because, Comerica took loan repayment withdrawals from the cash collateral accounts before the drivers were paid, the district court reasoned that Comerica Bank had no trust assets: "This Court finds that the deposits by customers into the cash collateral account did not create an escrow fund, because until compensation was paid to owner-operators, nothing had been withheld from (or deposited by) them."

Therefore, the court granted Comerica's summary judgment motion and denied the Owner-Operators' motion.

## 2.     First Appeal

The Owner-Operators appealed to this Court. Though Comerica Bank briefed its opposition to the Owner-Operators' arguments, it did not file a cross appeal from the district court's damage calculation and did not file a cross appeal from the district court's finding that Comerica would need relinquish any amounts held in trust.

Comerica did challenge several district court rulings. Comerica challenged the district court's finding that it was not a bona fide purchaser for value.[1] It also argued the statute of limitations stopped the plaintiffs' claims. Comerica also challenged the district court's finding that plaintiffs could bring an action for escrow funds before 1996 legislation creating a private right of action. More important, the first Sixth Circuit panel ruled on each of these issues.

In spite of its lack of cross appeal, Comerica's brief recognized that Plaintiffs were suing Comerica Bank for the difference between the $5.5 million settlement and the $900,000 cap on Arctic and D & A recovery. Its brief did not, however, contest the amount of damages.

This Court affirmed in part and reversed in part the district court's summary judgment opinion. This Court found material issues of fact meant that Comerica should not receive summary judgment on its statute of limitations defense "we agree with the district court that genuine issues of material fact exist which preclude a ruling, as a matter of law, on Comerica's statute of limitations defense" and remanded "for further proceedings consistent with this opinion."

---

[1] *In re Arctic Exp. Inc.*, 636 F.3d at 801.

We reversed the district court's holding that Comerica only acted as a trustee after general mileage compensation was paid to drivers. Specifically, in reversing the district court's opinion, this Court found: "Arctic breached its trust obligations to plaintiffs by encumbering the escrow funds, and dissipating the trust assets, through its lending relationship with Comerica. Comerica must therefore disgorge the trust property received in breach of trust unless it can establish a viable defense."

We identified only one "viable defense" and affirmed the district court's finding that the trier-of-fact would need to resolve Comerica's statute of limitations defense.

### 3.  2011 Judgment

After a bench trial, the district court issued a judgment for the Plaintiffs, awarding damages in the amount of $5,583,084.

#### a.  Comerica's statute of limitations defense

Acting as the fact-finder, the district court found Comerica did not prove its statute of limitations defense. Applying the federal discovery rule, the district court found that Plaintiffs "would not have been reasonably aware of the breach of trust claim against Comerica until they knew, or had reason to know, that the escrow funds had been transferred into Comerica's control in breach of statutory trust." The court found the relevant question to be "whether Plaintiffs, through the exercise of reasonable diligence, should have discovered the nature of Arctic's lending relationship with Comerica before January of 2000."

9

The district court used the same accrual standard we used in the earlier appeal: "Under federal law, . . . the limitations clock starts ticking when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."

The district court examined whether there was "'some reason to awaken inquiry' on the part of Plaintiffs and their counsel to 'direct diligence in the channel in which it would be successful' in locating the maintenance escrow funds." Acting as the fact-finder, the district court concluded there was not.

First, the district court observed that no publicly available information uncovered the details of Comerica's loan arrangement with Arctic. Supporting this finding, the Comerica Arctic account manager, Mark Conen, did not believe the maintenance escrow funds to be part of the collateral pledged to Comerica.

Second, the district court found a 1998 production of Arctic documents that included 33 settlement checks made to drivers and drawn on Comerica's accounts was insufficient to "awaken Plaintiffs" that Comerica was using escrow funds to satisfy Arctic loans. Rather, the court concluded that "[t]hese checks would have awakened Plaintiffs only to the fact that Arctic was banking with Comerica, a fact of . . . neutral significance."

Finally, the district court reasoned that orders limiting discovery and staying the Arctic Litigation, and Arctic's offer to stipulate that D & A retained the maintenance escrow funds for each putative class member in the Arctic Litigation further stymied Plaintiffs from discovering Comerica's lending relationship. The district court held that while a stay of discovery generally does

not toll the statute of limitations, "Plaintiffs could not have discovered the injurious transfer of the maintenance funds even through reasonable diligence." The district court found that Comerica's statute of limitations defense failed.

### b. Damages

#### i. Amount of damages

With regard to the amount of damages, before trial, the district court asked the parties for their positions regarding "whether damages should be an issue at trial or if the summary judgment proceeding [that had gone through to the Sixth Circuit case] disposed of this matter." In response, "[t]he Plaintiffs contend[ed] that this Court's summary judgment order and the Sixth Circuit's opinion established the amount of the award to which the Plaintiffs are entitled. The Defendant contends that damages must be proven at trial."

The district court then addressed this in an August 19, 2011, opinion. In that opinion, the district court reasoned that it had already established the damages to be $5,583,084 and had found that "if this Court determines that Comerica withdrew funds from that account in breach of trust, then Comerica would be liable for the entire amount of trust property." Although the district court had originally found no breach of trust, this Court reversed that finding. The district court rejected Comerica's argument that the measure of damages was not already decided:

> To reiterate, this Court held that there were two prerequisites for holding the Defendant liable for the full $5,583,084: "If this Court determines that the maintenance escrows were included in an Arctic account with Comerica, and if this Court determines that Comerica withdrew funds from that account in breach of trust, then Comerica would be liable for the entire amount of trust property (provided Comerica is not a bona fide purchaser)." *Owner Operator*, 615 F. Supp. 2d at 705. The Sixth Circuit subsequently held that both of these conditions existed as a matter

11

of law. *In re Arctic Express, Inc.*, 636 F.3d at 801. The question of the amount of damages that the Defendant owes to the Plaintiffs has therefore already been determined, and the only question remaining for trial is the Defendant's statute of limitations defense.

Repeating, the district court found this Court had ruled: "Consequently, Arctic breached its trust obligations to plaintiffs by encumbering the escrow funds, and dissipating the trust assets, through its lending relationship with Comerica. Comerica must therefore disgorge the trust property received in breach of trust unless it can establish a viable defense." And after this Court of Appeals rejected Comerica's bona fide purchaser defense, the district court found the only defense left for trial was Comerica's statute of limitations defense.

### ii.     Prejudgment interest

After the entry of judgment, the district court granted Plaintiffs' motion to alter the judgment to add an award of prejudgment interest. The court awarded prejudgment interest for the time period between July 16, 2004 and March 20, 2012 (the date of the final Comerica judgment). The court noted that the base damages amount included interest up to July 16, 2004.

The court found it appropriate to use the Prime rate,[2] reasoning that prejudgment interest is intended to compensate a party "for the lost interest value of money wrongly withheld from him or her."

---

[2]The district court observed that the Prime rate is the "prevailing market rate for lending to the lowest risk customers."

### 4. The instant appeal

Defendant Comerica appeals the district court's judgment against it and the court's award of $5,583,084 in damages and prejudgment interest. Plaintiffs respond that the district court's judgment was correct.

## II. ANALYSIS

### A. Statute of Limitations

Defendant Comerica Bank says that the district court erred when it ruled that the statute of limitations did not bar Plaintiffs Owner-Operators' claims. Comerica Bank says that the district court erred in the following ways: (1) in determining that acts constituted the violation underlying Plaintiffs' claims against Comerica were different than those underlying Plaintiffs' claims against Arctic; and (2) in concluding that the Owner-Operators exercised reasonable diligence in discovering the breach of trust.

The parties waived a jury trial. After a bench trial, we review the district court's factual findings for clear error.[3] The district court's factual findings can only be set aside if clearly erroneous. A "factual determination will be deemed clearly erroneous only where it is against the clear weight of the evidence of when, upon review of the evidence, the appellate court 'is left with the definite and firm conviction that a mistake has been committed.'"[4] This standard plainly does

---

[3] *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 683 (6th Cir. 2000).

[4] *Bobbie Brooks, Inc. v. Intn'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

not entitle a reviewing court to reverse the finding of the trier of fact even if the reviewing court is convinced that it would have decided the case differently.[5]

The district court correctly used the discovery rule. Under that rule, Plaintiff's claims accrue "if Plaintiffs knew, or 'in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."[6] The district court then found that knowledge of Arctic trust violations did not start the statute of limitations for claims against Comerica.[7]

In examining whether the district court committed clear error when it found Comerica failed to establish its statute of limitation defense, we first look to when Comerica's breach of trust occurred. Then, we look to when the Plaintiff should have discovered the breach of trust.

The district court correctly found that the claim against Comerica occurred when Comerica used the escrow funds and dissipated the trust assets through its lending relationship with Comerica.[8] It then concluded that "Plaintiffs would not have been reasonably aware of the breach of trust claim against Comerica until they knew, or had reason to know, that the escrow funds had been transferred into Comerica's control in breach of the statutory trust."[9]

---

[5] *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); *Kerman v. Comm'r of Internal Revenue*, 713 F.3d 849, 867 (6th Cir. 2013).

[6] R. 155 (Judgment at 41) (citations omitted).

[7] *Id.*

[8] *Id.* (Judgment at 42). We had earlier found that Comerica "cannot avail itself of the bona fide purchaser defense because it is not a bona fide purchaser for value." *In re Arctic Express Inc.*, 636 F.3d at 801.

[9] R. 155 (Judgment at 42).

The district court then proceeded to decide "whether Plaintiffs, through the exercise of reasonable diligence, should have discovered the nature of Arctic's lending relationship with Comerica before January of 2000."[10] Finding against Comerica, the district court then found insufficient evidence to have alerted the Plaintiffs that Comerica was improperly using the maintenance escrow funds for loan payments.[11]

The district court did not err in reaching its conclusion. Until Plaintiffs knew or should have known that Comerica was using escrow funds to pay Arctic loans, they had no reason to know that Comerica was improperly using their escrow trust monies.

Stated otherwise, the district court examined whether the Owner-Operators ignored some notice that Comerica used trust funds to satisfy Arctic indebtedness.[12]

Acting as the fact-finder after the parties waived a jury trial, the district court correctly found that Comerica needed to show that Plaintiffs did not exercise due diligence. To make that showing, Comerica needed to show that Plaintiffs should have discovered the acts constituting the alleged violation of the statutory trust over their maintenance escrow funds before January 2000.[13] Events after January 2000 are irrelevant.

---

[10] *Id.*

[11] *Id.*

[12] *See Ginsburg v. Haddad*, 78 F.3d 584, at *3 (6th Cir. Mar. 6, 1996) (unpublished table opinion) ("Notice is a question of fact, findings on which are subject to review under a 'clearly erroneous standards.'") (citing *Charash v. Oberlin College*, 14 F.3d 291, 300 (6th Cir. 1994)).

[13] R. 155 (Judgment at 42). This is because a four year statute of limitations for Plaintiffs claim for restitution of their trust funds exists under Ohio Rev. Code § 2305.09. Plaintiffs brought their claim against Comerica Bank in January 2004. *See* R. 58 3 (Adversary Complaint Against Comerica).

Comerica says that the following evidence "alerting Owner-Operators to issues concerning the funds" indicates such a failure:[14] (1) the Owner-Operators and The Cullen Firm "fail[ing] to make any efforts to obtain information from Arctic's maintenance fund supervisor;" (2) "[t]he August 1998 review of documents, in which the Owner-Operators located thirty-three settlement packets showing settlement checks drawn on a Comerica account with corresponding settlement sheets;" and (3) "[t]he July 1996 lawsuit between the two co-founders of Arctic, in which Mr. Durst and his wife were alleged to have misappropriated all of Arctic's corporate property." As described below, it was not clearly erroneous for the district court to conclude that none of these events gave sufficient notice.

### 1. Lack of effort by Owner-Operators and The Cullen Firm

Comerica seems to say that the district court erred when it did not find a lack of diligence in the Owner-Operators' and The Cullen Firm's failure to conduct a basic lien search.

Recall that the district court found that the details of the credit lending relationship between Arctic and Comerica and the use of the Owner-Operators' maintenance escrow funds to satisfy Arctic's debt was not public information at the relevant time.[15]

---

[14]Since the relevant time period ends January 2000, there is no need to consider post January 2000 events that Comerica says should have alerted the Owner Operators "to issues concerning the funds." *See* Appellant Br. at 44.

Comerica says that "[e]vents post dating the January 2000 statute of limitations cutoff date demonstrate that the Owner Operators stuck with their decision not to engage in any diligence." *Id.*

This argument is not persuasive. The fact that the Owner Operators did not bring their lawsuit earlier does not necessarily imply a lack of earlier diligence; that they had reason to know of the wrong done by Comerica within the time allowed for by the statute of limitations and brought a timely lawsuit toward the end of the statute of limitations period cannot be held against them under these circumstances.

[15]R. 155 (Judgment at 47 48).

Recall that Comerica's argument that a lien search would disclose that Comerica was using escrow funds to pay Arctic's loan is undercut by testimony from Comerica's own manager of the Arctic account, Mr. Conen, who did not know whether the maintenance escrow funds were part of the collateral pledged to Comerica.[16]

The district court found that "[s]imply learning that Comerica had a lien on Arctic's accounts receivables would not be enough to put Plaintiffs on reasonable notice that Comerica actually held the maintenance escrow accounts . . . ."[17]

The district court did not err in reaching this conclusion. The publicly available information that Comerica had a lien on Arctic's accounts receivable was not enough to alert a reasonable plaintiff that Comerica was using the escrow funds for non-trust purposes. The district court's finding was not "against the clear weight of the evidence."[18]

### 2.    August 1998 document review

Comerica says that the district court erred when the district court found that the Owner-Operators were not given reasonable notice of the breach of trust after they were given copies of thirty-three checks and settlement sheets from Comerica's accounts.[19] Those checks were drawn on Arctic accounts at Comerica Bank.

---

[16] *Id.*

[17] *Id.*

[18] *Bobbie Brooks, Inc.*, 835 F.2d at 1168.

[19] Appellant Br. at 46 47.

In weighing the evidence, the district court found that this evidence was of "neutral significance," suggesting only that Arctic banked with Comerica.[20] Recall that the court concluded it would not have awakened Plaintiffs to direct inquiry toward Comerica.

The district court did not make a clear error when it reached this conclusion; it was reasonable for the court to conclude that the checks and settlement sheets were insufficient to have put the Owner-Operators on notice of the need to investigate Comerica or the treatment of their escrow funds.

### 3. July 1996 lawsuit

Comerica seems to say that a July 1996 lawsuit over the ownership of Arctic's funds should have signaled to the Owner-Operators a need to investigate the location of the maintenance escrow funds. This argument loses.

The July 1996 lawsuit dealt with the ownership of Arctic. It had no specific relationship to the maintenance escrow funds.[21]

Moreover, the district court found that when Plaintiffs Owner-Operators served discovery on Arctic that sought the names of financial institutions holding the funds, the litigation process stymied them. In May 1998, Arctic offered to stipulate that D & A retained the maintenance escrow funds. The district court reasonably found Arctic's representation would have tended to "lead Plaintiffs *away* from the fact that the escrow funds were in the control of Comerica Bank."[22]

---

[20] R. 155 (Judgment at 49 50).

[21] *See* R. 177 7 (Complaint from 1996 Lawsuit).

[22] R. 155 (Judgment at 52 53).

The district court did not err in drawing such a conclusion. It follows that the 1996 lawsuit and the Owner-Operators' subsequent investigation of Arctic did not give the Owner-Operators reason to know of Comerica's wrongful transfer of the Owner-Operators escrow funds.

In addition, the district court found that the Owner-Operators acted diligently with their February 1998 discovery requests to Arctic and acted diligently to name Comerica as an additional defendant after learning of Comerica's lending relationship with Arctic.[23] The court specifically acknowledged that, "in general, a stay of discovery does not toll the statute of limitations," but found that "Plaintiffs could not have discovered the injurious transfer of the maintenance funds even through reasonable diligence."[24]

This conclusion was not a clear error by the district court. Only limited publicly available information existed regarding Arctic's loans with Comerica. Discovery in the Arctic Litigation was mostly not available. Against this backdrop, the district court could reasonably find that Plaintiffs did not know, or should not have reasonably known, of Arctic's lending relationship with Comerica.

Therefore, the district court's finding that the statute of limitations did not bar Plaintiffs' claim against Comerica was supported.

## B. Private Right of Action Under ICCTA

Defendant Comerica Bank says that the district court erred by improperly allowing the Owner-Operators to retroactively apply the ICCTA.[25]

---

[23] *Id.* (Judgment at 54).

[24] *Id.*

[25] Appellant Br. at 44.

This argument fails.[26] Comerica Bank's obligations to the Owner-Operators for restitution under the federal common law of trusts exist independent of the ICCTA. Therefore, as the district court correctly found, "whether the ICCTA can be applied retroactively to pre-1996 leases is not even an issue in this case."[27]

## C.   Damages

I dissent from the majority's conclusion that Comerica Bank did not waive its right to challenge the district court's damages determination. Defendant Comerica Bank says that the district court improperly used the Owner-Operators' Arctic and D&A settlement agreement to establish damages against Comerica Bank without proof.[28] Comerica Bank made similar arguments to the district court.

In a non-jury action, a trial court's determination of damages is reviewable only for abuse of discretion, subject to being set aside as a finding of fact under the "clearly erroneous" standard of Rule 52(a) of the Federal Rules of Civil Procedure.[29]

In response to Comerica Bank's argument, Plaintiffs Owner-Operators say that these arguments should not be considered by this Court. They say this Court's earlier mandate was

---

[26] Early, the district court found no support for the argument that the ICCTA was being improperly applied retroactively. *See Owner Operator Indep. Drivers Assoc.*, 270 F. Supp. 2d 990, 994 95 (S.D. Ohio 2003). "The Court finds that the ICCTA has no retroactive effect as it neither takes away nor impairs vested rights, nor creates a new obligation or duty, nor attaches a new disability with respect to actions taken prior to its promulgation." *Id.*

As later discussed, Comerica waived this argument by failing to take a cross appeal from this ruling in the earlier appeal to this Court.

[27] *Id.*

[28] Appellant Br. at 56, 61.

[29] *Smith v. Manausa*, 535 F.2d 353, 354 (6th Cir. 1976) (per curiam).

limited, not general.[30]  In the first appeal and although Comerica had appealed from several district court rulings, Comerica never cross appealed from the district court's finding that the earlier damage calculation controlled.  And, the Plaintiffs say this Court limited its remand to the statute of limitations issue.[31]  Plaintiffs say Comerica Bank waived its right to challenge the amount of damages.[32]

This Court's mandate rule governs this issue.[33]

### 1.     Type of Remand

In my opinion, this Court's earlier order was a limited remand for the purpose of considering Comerica's statute of limitations defense.

In the first appeal, this Court held that "we agree with the district court that genuine issues of material fact exist which preclude a ruling, as a matter of law, on Comerica's statute of limitations defense" and remanded "for further proceedings consistent with this opinion."[34]  This Court identified no other issue that needed consideration on remand.

---

[30] Appellee Br. at 21 23.

[31] *Id.* at 23 25.

[32] *Id.*

[33] *See United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003) (noting that the mandate rule has two components: (1) the "limited remand rule" and (2) the "waiver rule").

[34] *In re Arctic Express Inc.*, 636 F.3d at 802 03.

"A district court is bound to the scope of the remand issued by the court of appeals."[35]  And, a district court may not reconsider its own rulings made before appeal and not raised on appeal.[36]

Since the damages issue was not remanded for the district court's consideration, this Court should not now consider arguments regarding the damages amount.

### 2.  Waiver

Moreover, I believe Defendant Comerica Bank waived its right to challenge these damages when it did not file a cross appeal.

In its 2009 summary judgment opinion, the district court decided against Comerica on Comerica's argument that it was not bound by the damages established in the Arctic Litigation.  At the district court, Comerica Bank prevailed and received summary judgment on other grounds, grounds that this Court later reversed.

The Owners-Operators brought the first appeal, seeking reversal of the district court's decision.  Comerica Bank never cross appealed the district court's finding that it was bound by the damage amount established in the Arctic Litigation.

The majority says: "Clear Sixth Circuit precedent dictates that the complete relief Comerica obtained on summary judgment foreclosed the possibility of a cross-appeal because this court would have lacked jurisdiction to consider it."  As the earlier panel of this Court shows, and as Comerica demonstrates, this is wrong.

---

[35] *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999).

[36] 18B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 4478.3 (2d ed. 2013) ("Law of the Case    Mandate Rule").

Recall, Comerica originally won summary judgment. According to the majority, having won summary judgment, "Comerica "thus lack[ed] standing to petition this court for review."

But, even though Comerica had won summary judgment, Comerica did challenge several district court rulings in the first appeal. Comerica challenged the district court's finding that it was not a bona fide purchaser for value.[37]

Comerica also challenged the district court's finding that plaintiffs could bring an action for escrow funds before the 1996 private right of action was created. The district court had certified a class period beginning July 1, 1993. Comerica said any private right of action could not include claims before January 1, 1996. Comerica then argued to the first panel: "the private right of action created by the ICCTA did not apply to pre-1996 contracts. Should this Court reverse for further proceedings, this issue would need to be addressed."[38] While the majority says this Court had no jurisdiction and Comerica had no standing, Comerica raised the damage issue regarding the appropriate class period. And the first Sixth Circuit panel ruled on each of these issues.

More important, Comerica Bank stands akin to a transferee of a fraudulent conveyance who fails to show they are bona fide providers of value. To use the Arctic settlement, the plaintiffs need make only a minimal showing: "Rather, if a plaintiff holds a judgment on liability against a judgment-proof pro se defendant and hopes to use the judgment as a predicate for a fraudulent conveyance claim, she need only carry out a judicially supervised inquest to protect her judgment."[39]

---

[37] *In re Arctic Exp. Inc.*, 636 F.3d at 801.

[38] (citations omitted).

[39] *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).

The plaintiffs need only make a minimal showing because the trust funds are theirs.

Under the law of the case doctrine and the rules controlling remand, district courts cannot change its own rulings made before appeal and not raised on appeal.[40] This is sometimes referred to as law of the case and sometimes referred to as waiver.

The failure to raise an appealable issue in a first appeal stops review in a second appeal.[41] That is, a party who could have sought review of an issue or a ruling during a prior appeal waives its challenge to the ruling in if there is a later appeal.[42]

Although Comerica Bank could argue alternative grounds to support the first district court's ruling, it needed to file a cross appeal if it seeks to "enlarge[ its] own rights . . . or to lessen the rights of [the Owner-Operators]."[43] With its argument that Plaintiff's damages should be cut, Comerica

---

[40] 18B Wright & Miller § 4478.3 ("Law of the Case    Mandate Rule"); *see also* 18B Wright & Miller § 4478.6 ("Law of the Case    Related Doctrines") ("It is common to rule that a question that could have been but was not raised on one appeal cannot be resurrected on a later appeal to the same court in the same case.").

[41] *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 505 F. App'x 430, 436 (6th Cir. 2012) ("Given the district court's previous finding that Stores # 3 and # 4 were not 'sufficiently within the contemplation of the parties at the time of the contract's formation,' and JGR's failure to appeal this ruling, we find that the district court did not abuse its discretion in accepting this finding that the evidence on the value of the third and fourth stores could not be submitted to the jury."); *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) ("[A]n issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand.").

[42] *United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) ("Generally, the law of the case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." (internal quotation marks omitted) (quoting *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997))); *Dixon v. Roscommon Cnty.*, 896 F. Supp. 2d 670, 679 (E.D. Mich. 2012).

[43] *Olympic Fastening Sys., Inc. v. Textron Inc.*, 504 F.2d 609, 617 (6th Cir. 1974) ("The appellee may, without having to file a cross appeal, defend a judgment on any ground consistent with the record, even if rejected in the lower court. But he cannot attack the judgment, either to enlarge his own rights thereunder or to lessen the rights of his adversary, unless he files a cross appeal. A cross appeal is necessary even if the appellee merely seeks to correct an error or to supplement the decree with respect to a matter not dealt with below.").

seeks to lessen the rights    the damage determination    that the Owner-Operators received in the district court's first decision.

In making its challenge to the district court's damage ruling, Comerica Bank asks this Court to modify   to reduce   the damage finding the district court made before the first appeal.  If allowed, this would modify the judgment to its favor and to the Owner-Operators' detriment.

Specifically, Comerica argues that the Owner-Operators do not have a right to collect the entire $5,583,084.  In its 2009 opinion, the district court found these damages but found that Comerica did not breach the trust in removing the money from cash collateral account.  We disagreed and found the cash collateral account   the account that Comerica withdrew funds from   was also subject to the trust.  If Comerica disagreed with the district court's finding that the breach of trust involved more than $5.5 million, it needed to cross appeal.[44]  Comerica Bank needed to file a cross appeal to save the damages issue.[45]

After ordering pretrial briefing on whether damages should be a trial issue, the district court properly found that "the Sixth Circuit's holding conclusively established the issue of recoverable damages against Comerica at $5,583,084 . . . ."[46]

---

[44] *See Gulliford v. Pierce Cnty.*, 136 F.3d 1345, 1350 (9th Cir. 1998) (finding defendant waived its ability to appeal district court's determination that it was not entitled to qualified immunity where defendant did not cross appeal on this issue).

[45] *United States v. Bajakajian*, 84 F.3d 334, 338 (9th Cir. 1996), *aff'd*, 524 U.S. 321 (1998) (finding failure of defendant to file cross appeal requiring forfeiture of funds, even if forfeiture would be unconstitutional, deprived court of jurisdiction to set aside District Court forfeiture order).

[46] R. 152 (Order denying Defendant's offer of proof and request that Plaintiffs be required to prove damages at 3  4).

As the district court recognized, Comerica failed to raise the damages issue in its initial appeal and should not be allowed to do so now. I disagree with the majority's findings that this Court should consider Comerica's arguments regarding damages now and that the district court should consider proof as to damages owed by Comerica.

With the first appeal, this Court had jurisdiction to consider a Comerica Bank cross appeal challenging the district court's finding that it would have been liable for $5,583,084 but had escaped liability only because the district court(wrongly) found no trust was created "until compensation was paid."[47] Even though Comerica received judgment, this Court had jurisdiction to consider a cross appeal.[48]

We are left with a prudential decision where a district court has made a central decision against a party but then gave that party judgment on other grounds, should that party be required to cross appeal?

While the majority is certainly correct that there are costs associated with requiring Comerica to cross appeal on the damages issue, there are also costs associated with allowing appeal after appeal. Especially in a case like this that has been going on for nearly ten years.

Whether a party who has won on other grounds needs to take a cross appeal from an adverse finding should turn on whether the earlier ruling gave fair notice that an issue was being conclusively

---

[47] *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 615 F. Supp. 2d 692, 706 (S.D. Ohio 2009).

[48] *United States v. Windsor*, 133 S. Ct. 2675, 2687(2013) ("As a matter of practice and prudence, we have generally declined to consider cases at the request of a prevailing party, even when the Constitution allowed us to do so. But this rule does not have its source in the jurisdictional limitations of Art. III. In an appropriate case, appeal may be permitted ... at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III.") (quoting *Deposit Guaranty Na'l. Bank v. Roper*, 445 U.S. 326, 333 (1980)).

decided. Simply, the language of the district court's 2009 opinion made it clear that "[i]f this Court determines that the maintenance escrows were included in an Arctic account with Comerica, and if this Court determines that Comerica withdrew funds from that account in breach of trust, then Comerica would be liable for the entire amount of trust property . . ." and that opinion clearly said the "trust property" was $5,583,084.

Comerica knew that if the district court's findings regarding a breach of trust were reversed it would be liable for the trust property. And, Comerica knew the district court found the trust property was $5,583,084. If it took issue with the district court's finding that in the event of a breach of trust Comerica would be liable for $5,583,084, Comerica should have cross appealed. But it didn't.

Also, little suggests the damage amount will change. The $5,583,084 judgment came from Arctic and Comerica records and the calculation was simple. Arctic made maintenance deductions from each driver paycheck (and kept records on the amount of each maintenance deduction.) Arctic identified the amount of each driver's maintenance contributions on the driver's weekly pay documents. And Arctic records show what maintenance payments were made for truck repairs.

The calculation becomes easy total the drivers maintenance contributions and deduct the maintenance payments made for repairs.[49] Although some uncertainty exists attributing repair payment to particular drivers, there seems no real issue how much Arctic withheld from the drivers and no issue how much Arctic paid for repairs.

---

[49] In the Arctic Litigation, the drivers and Arctic made this specific calculation. *Owner Operators v. Arctic Express, Inc.*, 97 cv 00750, Doc. 203 1 (S.D. Ohio, May 21, 2004).

The calculation was not difficult. Arctic held the drivers' maintenance funds in escrow and in trust. Comerica used the drivers funds to pay Arctic's debts. The drivers' damages are the amounts Arctic withheld less the amount that Arctic paid for repairs and maintenance.

Some errors in the calculation may exist. Little suggests that any errors are significant.

I believe it is too late for Comerica to contest this finding now.

## D.    Prejudgment Interest

Defendant Comerica Bank says that the district court awarded "an excessive amount of prejudgment interest" when it used the Prime rate.[50]

The standard for reviewing an award of prejudgment interest is an abuse of discretion.[51]

The district court did not abuse its discretion in its calculation and award of prejudgment interest.

As the district court found, prejudgment interest should compensate a party "for the lost interest value of money wrongly withheld from him or her."[52] And, "[a]llowing a defendant to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment."[53] Where, as here, Plaintiffs have been working to disgorge their property for numerous years, prejudgment interest is appropriate.

---

[50] Appellant Br. at 66, 69.

[51] *Rybarczk v. TWR, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) ("[W]e have 'long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles.'") (quoting *Ford v. Uniroyal*, 154 F.3d 613, 616 (6th Cir. 1998)) (alteration in original quotation)).

[52] R. 171 (Amended Judgment at 4) (citing *Price v. Bd. of Trustees of Ind. Laborer's Pension Fund*, 2:07 cv 0933, 2009 WL 2047591, at *2 (S.D. Ohio July 2, 2009)).

[53] *Id.*

Moreover, the district court's use of the Prime rate for calculating the prejudgment interest is not an abuse of discretion.

As the district court observed, this Court and other circuits have repeatedly looked favorably on awards of prejudgment interests tied to prevailing market rates. Such awards reflect what the defendant would have had to pay in order to borrow the money.[54]

That the Owner-Operators are able to collect more in interest from Comerica Bank than they could from Arctic and D & A is irrelevant. Though related to the action against Arctic and D & A, Plaintiffs action against Comerica is distinct and based on Comerica's own actions with regard to the maintenance escrow funds.

The district court's prejudgment interest award to the Owner-Operators based on the Prime rate therefore does not constitute an abuse of discretion.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment with respect to the statute-of-limitations, ICCTA-retroactivity, and prejudgment-interest issues, but I dissent on the majority's conclusions regarding the district court's damages determination and would find that Comerica waived its right to challenge the calculation based on the law-of-the-case doctrine and the mandate rule.

---

[54] *Id.* (Amended Judgment at 6) (citing *Rybarczyk,* 235 F.3d at 986; *EEOC v. Wooster Brush Co. Emps. Relief Ass'n,* 727 F.2d 566, 579 (6th Cir. 1984); *Lorenzen v. Emps. Ret. Plan of Sperry & Hutchinson Co.,* 896 F.2d 228, 236 37 (7th Cir. 1990)); *Katsaros v. Cody,* 744 F.2d 270, 281 (2d Cir. 1984)).

**COOK, Circuit Judge, joined by MOORE, Circuit Judge**. Though we concur with Judge Gwin's conclusions with respect to the statute-of-limitations, ICCTA-retroactivity, and prejudgment-interest issues, we write separately on the issue of damages. Courts speak through judgments, and the judgment appealed here represents Comerica's first adverse judgment as opposed to "calculation" or "finding" as referenced by the dissent on damages. *See California v. Rooney*, 483 U.S. 307, 311 (1987) (per curiam) (holding that courts "review[] judgments, not statements in opinions"). Further, the district court incorrectly held that the damages issue had already been decided by this court in the prior appeal. Because we agree with Comerica that its liability cannot be predetermined by a settlement to which it was not a party, we VACATE the district court's damages determination and REMAND for consideration of proof as to damages owed by Comerica.

   1.    *Law of the Case or Waiver*

The Owner-Operators first insist that either the law-of-the-case or the waiver doctrine insulates the district court's failure to consider the damages issue on remand. "Generally, the law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation *which could have been challenged in a prior appeal*, but were not." *United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) (emphasis added) (internal quotation marks omitted). At no point in the procedural history of this case was there a decision as to the amount of damages Comerica must pay that could have been challenged by Comerica but was not.

Clear Sixth Circuit precedent dictates that the complete relief Comerica obtained on summary judgment foreclosed the possibility of a cross-appeal because this court would have lacked jurisdiction to consider it. In *Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012), for example, the

30

plaintiffs claimed that the defendant deputy sheriffs violated their Fourth Amendment rights. *Id.* at 686. Though the district court ruled that the deputies' conduct violated the Fourth Amendment, it nevertheless granted them summary judgment on the basis of qualified immunity. *Id.* The plaintiffs appealed, and the deputies cross-appealed, contending that the district court erred in finding a constitutional violation. *Id.* The court dismissed the cross-appeal for lack of jurisdiction, reasoning that "[b]ecause the Deputies obtained all the relief they sought from the district court on [the plaintiffs'] Fourth Amendment claim, we lack jurisdiction to consider the Deputies' appeal." *Id.* Other cases hold similarly. *See Wheeler v. City of Lansing*, 660 F.3d 931, 939 (6th Cir. 2011) ("There is generally no appellate jurisdiction when the appellant does not seek a change in the relief ordered by the judgment appealed from."); *ASARCO, Inc. v. Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000) ("It is a well settled principle that a prevailing party cannot appeal an unfavorable aspect of a decision in its favor."); *Olympic Fastening Sys., Inc. v. Textron, Inc.*, 504 F.2d 609, 618 (6th Cir. 1974) ("Having received the full relief available to it . . . , [the plaintiff] had no occasion to file an appeal.").

Courts adopted this rule because "[p]ermitting review of a prevailing party's claim creates tension with Article III's prohibition against issuing advisory opinions." *Wheeler*, 660 F.3d at 940. Moreover, abandonment of this sensible principle would likely lead to a flood of over-cautious appeals by prevailing parties.

This authority, which neither the dissent nor the Owner-Operators address, conclusively repudiates the contention that Comerica forfeited any challenge to damages by failing to cross-appeal the district court's judgment in Comerica's favor. And the cases cited by the Owner-Operators and

the dissent fail to support the dissent's analysis, as they all involved a party that *lost*, at least in part, before the district court. *See, e.g.*, *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 832-34 (5th Cir. 2011) (defendant FDA forfeited issue when it failed to raise it in initial appeal of district court's grant of summary judgment for plaintiffs); *United States v. Adesida*, 129 F.3d 846, 849-50 (6th Cir. 1997) (criminal defendant forfeited issues when he failed to file earlier cross-appeal after conviction and sentencing). In those cases the parties' failure to appeal properly constituted forfeiture under the law-of-the-case doctrine because each sought a change in the underlying judgment that adversely affected rights or interests. Here, the complete relief granted to Comerica on summary judgment obviates application of the doctrine to Comerica's disadvantage.

The dissent adheres to the view that this court could have exercised jurisdiction over an earlier cross-appeal by Comerica because "[i]n an appropriate case, appeal may be permitted . . . at the behest of the party who has prevailed on the merits, *so long as that party retains a stake in the appeal satisfying the requirements of Art. III.*" *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 334 (1980) (emphasis added). "A 'stake in the appeal' exists if the collateral ruling affects the prevailing party's rights and if erroneous would work harm to the prevailing party's interest." 19 James Wm. Moore et al., Moore's Federal Practice § 205.04[1], at 205-43 (3d ed. 2013). It cites, for example, *Deposit Guaranty* where plaintiffs successfully appealed denial of class certification, despite the defendant tendering damages to the individual plaintiffs. *Deposit Guaranty*, 445 U.S. at 336. The Court reasoned that the plaintiffs "retain[ed] a continuing individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id.*

Likewise, in *United States v. Windsor*, the Supreme Court found that the United States retained a sufficient stake in the litigation to support Article III standing even though the government agreed with plaintiffs on the unconstitutionality of the Defense of Marriage Act finding a requirement to expend Treasury funds "a real and immediate economic injury." 133 S. Ct. 2675, 2686 (2013).

Comerica, though, having won complete relief, retained no such stake to justify a cross-appeal that would satisfy Article III. Rather, like the plaintiff in *ASARCO*, the district court's earlier judgment in favor of Comerica caused Comerica "no distinct and palpable injury," as required by Article III's case or controversy requirement. *ASARCO*, 206 F.3d at 724 (internal quotations marks omitted) (considering and rejecting plaintiff's contention that the *Deposit Guaranty* exception permitted plaintiff's appeal of a favorable judgment). As in *ASARCO*, *Hensley*, and *Wheeler*, Comerica "thus lack[ed] standing to petition this court for review." *Id.*

2.      *Limited Mandate*

The Owner-Operators next maintain that the mandate rule, which restricts the issues to be reviewed on remand to those authorized, precludes our review of the district court's damages determination. "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). "The language used to limit the remand should be, in effect, *unmistakable*." *Id.* at 268 (emphasis added). "In the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997).

Here, the prior panel's mandate reads as follows: "For the foregoing reasons, we affirm in part and reverse in part the district court's judgment and remand for further proceedings consistent with this opinion." *In re Arctic Express, Inc.*, 636 F.3d 781, 803 (6th Cir. 2011). This language, which imposes no limit on the issues for review and establishes no particular procedure for the district court to follow, conforms with language we have previously deemed a general remand. *See, e.g.*, *United States v. Lopez*, 453 F. App'x 602, 604 (6th Cir. 2011) (finding remand "for further proceedings consistent with this opinion" to be a general remand because it "contain[ed] no limiting language and is presumptively a general one").

In contrast, we label mandates "limited" only when the language the remanding court employs provides specific instructions. *See, e.g.*, *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999) (deeming remand limited when it directed the district court to hold an evidentiary hearing and instructed that "[t]he district court's inquiry should relate to" a single, specific issue).

In construing the earlier mandate as limited to the statute-of-limitations issue, the dissent points to this language in the opinion: "[W]e agree with the district court that genuine issues of material fact exist which preclude a ruling, as a matter of law, on Comerica's statute of limitations defense." *Arctic Express*, 636 F.3d at 803. But this language, found in a section of the opinion different from the mandate, signaled only that the court found summary judgment inappropriate on the statute of limitations issue; it in no way limited the district court's purview on remand.

3.    *The District Court's Damages Determination*

Because neither the law-of-the-case doctrine nor the mandate rule forecloses review of the district court's damages determinations, we next consider Comerica's argument that the district court

34

erred in finding that "[t]he question of the amount of damages that [Comerica] owes to [the Owner-Operators] has . . . already been determined." Whether the earlier settlement agreement may set the amount of Comerica's liability constitutes a question of law, and so we give fresh review. *Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 553 (6th Cir. 1994).

We agree with Comerica   the district court's contrary holding notwithstanding   that the prior decision of this court stopped short of determining Comerica's liability and *never reached* the issue of damages. Rather, the factual background section of the opinion recounted that "plaintiffs entered into a $5.5 million settlement agreement . . . [which] equaled the total amount of maintenance escrow funds, plus interest, owed by Arctic and D & A to [the Owner-Operators]." *Id.* at 789. And later in the opinion, in discussing the lending relationship with Comerica that Artic used as the vehicle to breach its trust obligations, the panel opined that "Comerica must therefore disgorge the trust property received in breach of trust *unless* it can establish a viable defense." *Id.* at 801 (emphasis added). The opinion thus forged no link between the $5.5 million settlement amount and its later reference to "the trust property received in breach of trust," as the district court's damages opinions suggest. To the contrary, the amount of damages due from Comerica was not an issue taken up by the panel in the earlier appeal. *See generally id.* (deciding (1) whether Motor Carrier Act regulations created a statutory trust for the benefit of the Owner-Operators; (2) when the Owner-Operators' statutory trust interest attached; (3) whether Comerica constituted a bona fide purchaser for value; and (4) whether the relevant statute of limitations barred the Owner-Operators' claim as a matter of law).

Because the district court erroneously found the prior panel's opinion binding with respect to damages, it never required the Owner-Operators to submit evidence of damages. It instead relied entirely on the earlier settlement agreement between the Owner-Operators and Arctic, with Arctic stipulating that it would not challenge the damages calculations. In other words, the district court determined Comerica's liability without hearing from Comerica. "[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement." *City of Warren v. City of Detroit*, 495 F.3d 282, 287 (6th Cir. 2007); *see also Davis v. Blige*, 505 F.3d 90, 102-03 (2d Cir. 2007) ("Settlement agreements are not to be used as a device by which A and B . . . can . . . take away the legal rights of C, a nonparty.")

Yes, Comerica had notice of the settlement agreement. But notice of the settlement agreement without more leaves Comerica's right to challenge the district court's damages determination unaffected. The Owner-Operators could bind Comerica only through joining them as a party to the earlier litigation. *See Martin v. Wilks*, 490 U.S. 755, 765 (1989) ("Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree."); *see also City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007) (acknowledging that a non-party to a consent judgment "is entitled to its 'own day in court' to challenge actions taken under the judgments").

Moreover, allowing the Owner-Operators to impose its settlement agreement on non-party Comerica appears particularly inequitable in this case, as the agreement required Arctic to pay only

$900,000 of the stipulated-to $5.5 million. The Owner-Operators seek to saddle Comerica with the majority of the judgment despite the fact that Comerica had no opportunity to challenge the settlement amount. Indeed, when the Owner-Operators representatives apprised class members of the Arctic settlement, they assured the membership that they "have not given up on the total Judgment Amount. A claim has been filed against Comerica . . . to recover the Judgment Amount in a separate action." As the Fifth Circuit incisively observed in a similar factual context, "[t]he [settlement agreement] was the product not of adversaries, but of joint venturers. The plain purpose was to agree to an extraordinarily high judgment . . . and impose the liability upon [Comerica]    with no opportunity for [Comerica] to defend . . . the judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 890 (5th Cir. 1998).

The dissent notes that "little suggests the damage amount will change" on remand because "[t]he calculation was not difficult." But according to Comerica, errors pervade the stipulated-to damages calculations. It points to internal inconsistencies that inflated the total $5.5 million damages figure. (Appellant Br. at 55-57.) And Comerica maintains that the damages calculations include many transactions that postdate Comerica's lending relationship with Arctic. (Appellant Br. at 57-58.) These alleged errors appear more significant than the dissent acknowledges. The district court must afford Comerica the opportunity to challenge these calculations in determining Comerica's liability.

For these reasons, we VACATE the district court's final judgment and REMAND for proceedings consistent with this opinion.